1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES  DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| US DISTRESSED MORTGAGE FUND, LLC, | No. C 13-05177-LB |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| v. | |
| WELLS FARGO BANK, N.A., and REGIONAL TRUSTEE SERVICES CORPORATION, WELLS FARGO HOME MORTGAGE, INC., a division of WELLS FARGO BANK, N.A. a National Association; and DOES 1 through 100, inclusive, | [Re: ECF No. 34] |
| Defendants. | |
| _____/ | |

## INTRODUCTION

Plaintiff US Distressed Mortgage Fund, LLC (the "Fund") sued Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo Home Mortgage, Inc., a division of Wells Fargo Bank, N.A. ("Wells Fargo Home Mortgage").  *See* Second Amended Complaint ("SAC"), ECF No. 33.[1]  The parties stipulated to the dismissal of Wells Fargo Home Mortgage, Stipulation, ECF No. 41, and now Wells Fargo moves to dismiss the Fund's Second Amended Complaint.  *See* Motion, ECF No. 34.  Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the June 5, 2014 hearing.  Upon consideration of the Second Amended Complaint, the

---

[1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

1  briefs submitted, and the applicable legal authority, the court **GRANTS IN PART** and **DENIES IN**

2  **PART** Wells Fargo's motion to dismiss.[2]

3                                 **STATEMENT**[3]

4

5        [2] The Fund and Wells Fargo have consented to the undersigned's jurisdiction.  Consent
6  (Wells Fargo), ECF No. 8; Consent (Fund), ECF No. 12.

7        [3] The facts are taken from the Second Amended Complaint and the documents submitted by
   Wells Fargo that are subject to judicial notice.  Wells Fargo asks the court to take judicial notice of
8  the following documents: (1) a Deed of Trust, dated January 12, 2000, that was recorded in the
   Official Records of the San Mateo County Recorder's Office as Document No. 2000-005316 on
9  January 13, 2000; (2) an Open End Deed of Trust, dated July 2, 2007, that was recorded in the
   Official Records of the San Mateo County Recorder's Office as Document No. 2007-104376 on July
10  11, 2007; (3) a Certificate of Corporate Existence, dated April 21, 2006, that was issued by the
   Office of Thrift Supervision, Department of the Treasury ("OTS"); (4) a letter on the letterhead of
11  the OTS, dated November 19, 2007, authorizing a name change from World Savings Bank, FSB to
   Wachovia Mortgage, FSB; (5) the Charter of Wachovia Mortgage, FSB, effective December 31,
12  2007, and signed by the Director of the OTS, reflecting in Section 4 that Wachovia Mortgage, FSB
   was subject to the Home Owner's Loan Act and the OTS; (6) the Official Certification of the
13  Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage
   FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo
14  Bank, N.A.; (7) a printout from the website of the Federal Deposit Insurance Corporation, dated
   December 15, 2010, showing the history of Wachovia Mortgage, FSB; (8) a Notice of Default, dated
15  February 24, 2012, that was recorded in the Official Records of the San Mateo County Recorder's
   Office as Document No. 2012-026085 on February 28, 2012; (9) a Notice of Trustee's Sale, dated
16  May 17, 2012, that was recorded in the Official Records of the San Mateo County Recorder's Office
   as Document No. 2012-074875 on May 30, 2012; (10) a Trustee's Deed Upon Sale, dated March 4,
17  2013, that was recorded in the Official Records of the San Mateo County Recorder's Office as
   Document No. 2013-040845 on March 15, 2013; (11) a Notice of Default, dated May 31, 2013, that
18  was recorded in the Official Records of the San Mateo County Recorder's Office as Document No.
   2013-083249 on June 4, 2013; and (12) a Notice of Trustee's Sale, dated September 4, 2013, that
19  was recorded in the Official Records of the San Mateo County Recorder's Office as Document No.
   2013-132311 on September 11, 2013.  *See* Defendant's Request for Judicial Notice ("RJN"), Exs. A-
20  L, ECF No. 35.

21        The court may take judicial notice of matters of public record.  *Lee v. City of Los Angeles*,
   250 F.3d 668, 689 (9th Cir. 2001).  Because Exhibits A-L are public records, the court may take
22  judicial notice of the undisputed facts contained in them.  *See* Fed. R. Evid. 201(b); *Hotel Employees
   & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); *see
23  also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011).  Moreover, the
   Fund has not objected to the court's consideration of any these documents or challenged any of the
   facts in them.  *See generally* Opposition, ECF No. 36.  Accordingly, the court takes judicial notice
   of Exhibits A through L (numbered 1-12 above) to Wells Fargo's request.

**I.   FACTS**

On or about January 13, 2000, World Savings Bank, FSB ("World Savings"), a federal savings bank, made a loan of $431,200 to Manoj Rijhwani and Lisa Rijhwani.  SAC ¶ 5, ECF No. 33 at 2; RJN, Ex. A, ECF No. 35 at 6.  This loan was consummated through a promissory note and was secured by a deed of trust recorded against the Rijhwanis' home located at 1044 Rudder Lane, Foster City, California (the "Property").  SAC ¶ 5, ECF No. 33 at 2; RJN, Ex. A, ECF No. 35 at 6. For purposes of this order, this loan will be referred to as the "First Loan" and this deed will be referred to as the "First Deed."

On or about July 5, 2007, the Rijhwanis took out a $77,845 equity line of credit with World Savings to refinance the Property.  SAC ¶ 5, ECF No. 33 at 2; RJN, Ex. B, ECF No. 20 at 31.  This loan also was consummated through a promissory note and was secured by a deed of trust recorded against the Property.  SAC ¶ 5, ECF No. 33 at 2; RJN, Ex. B, ECF No. 20 at 31.  For purposes of this order, this loan will be referred to as the "Second Loan" and this deed will be referred to as the "Second Deed."

On December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB ("Wachovia"), and remained a federal savings bank.  RJN, Exs. D-E, ECF No. 35 at 55-60.  In November 2009, Wachovia changed its name to Wells Fargo Bank Southwest, N.A., became a national association (and ceased being a federal savings bank), and immediately merged into Wells Fargo, which was and is a national association. RJN, Exs. F-G, ECF No. 35 at 61-64.  The Fund alleges that both the Rijhwanis' "mortgage[s]" and/or the" promissory note[s] and deed[s] of trust" underlying those loans were eventually "transferred" to Wells Fargo.  *See* SAC ¶ 5, ECF No. 33 at 2.

In 2011, the Rijhwanis defaulted on the First Loan and the Second Loan.  SAC ¶ 6, ECF No. 33 at 2.  A Notice of Default relating to the Second Loan and was recorded on February 28, 2012.  RJN, Exs. H, ECF No. 35 at 65-69.   A Notice of Trustee's Sale relating to the Second Deed was recorded on May 30, 2012.  RJN, Ex. I, ECF No. 35 at 71-72. On March 4, 2013, "Wells Fargo completed a foreclosure" under the Second Deed and a Trustee's Deed Upon Sale was recorded on March 15, 2013.  SAC ¶ 6, ECF No. 33 at 2; RJN, Ex. J, ECF No. 35 at 73-76.  The Fund was the successful bidder with a bid of $231,600.  SAC ¶ 6, ECF No. 33 at 2; RJN, Ex. J, ECF No. 35 at 73-76.  The

UNITED STATES DISTRICT COURT
For the Northern District of California

1    amount owed on the Second Loan at the time of the sale was $85,468.94.  SAC ¶ 6, ECF No. 33 at

2    2; RJN, Ex. J, ECF No. 35 at 73-76.

3         The Rijhwanis, however, had defaulted on the First Loan, too, so after purchasing the Property,

4    the Fund began taking steps to find out how much money was still owed on it.  *See* SAC ¶¶ 7-8, ECF

5    No. 33 at 2.  On April 9, 2013, the Rijhwanis "executed two 'Authorization to Inquire' forms

6    prepared by Wells Fargo authorizing [the Fund] to assist [the Rijhwanis] in obtaining information

7    about their loans.  *Id.* ¶ 7, ECF No. 33 at 2.  However, despite "numerous" and "repeated" requests

8    "for a reinstatement quote and a payoff demand" for the First Loan, Wells Fargo "failed to provide

9    any information even though [the Fund] is the owner of the Property and the [Rijhwanis] submitted

10   an Authorization to Inquire to allow [the Fund] to access information about the loan."  *Id.* ¶ 8, ECF

11   No. 33 at 2.

12        On May 20, 2013, the Rijhwanis and the Fund entered into a stipulation regarding possession of

13   the Property.  *Id.* ¶ 9, ECF No. 33 at 2.  In that stipulation, the Rijhwanis agreed to vacate the

14   Property by July 31, 2013.  *Id.*  Since that time, the Fund has been in possession of the Property.  *Id.*

15        On June 4, 2013, Wells Fargo, through its agent, Regional Trustee Services Corporation

16   ("RTSC"), which is not a party to this ligation,[4] recorded a Notice of Default under the First Loan.

17   SAC ¶ 10, ECF No. 33 at 3; RJN, Ex. K, ECF No. 35 at 77-81.  This notice stated that the amount

18   owed on the First Loan as of May 31, 2013 was $129,063.76.  RJN, Ex. K, ECF No. 35 at 77-81.  A

19   Notice of Trustee's Sale was recorded on September 11, 2013.  SAC ¶ 10, ECF No. 33 at 3; RJN,

20   Ex. L, ECF No. 35 at 83-84.

21   **II.  PROCEDURAL HISTORY**

22        The Fund initiated this civil action on October 8, 2013 in San Mateo County Superior Court.  *See*

23   Notice of Removal, ECF No. 1.  On November 6, 2013, Wells Fargo removed the action to this court

24   on diversity of citizenship grounds.  *See id.*  On April 4, 2014, upon the parties' stipulation, the Fund

25   filed the operative Second Amended Complaint.  *See* SAC, ECF No. 33.  It contains the following

26   claims against Defendants: (1) violation of California Civil Code § 2941; (2) violation of California

27   _____

28        [4] The Fund named RTSC as a defendant to this action in the original complaint, but the Fund
     did not name it as a defendant in any subsequent, amended complaints.

1   Civil Code § 2943; (3) violation of 12 C.F.R. 1026.36; (4) violation of 12 U.S.C. § 2605; and (5)

2   violation of California Business and Professions Code § 17200.  *See id.* ¶¶ 13-37, ECF No. 33 at 3-5.

3       On April 18, 2014, Wells Fargo moved under Federal Rules of Civil Procedure 8(a) and 12(b)(6)

4   to dismiss the Fund's second, third, fourth, and fifth claims.  Motion, ECF No. 34.  It did not move

5   to dismiss the Fund's first claim.  The Fund filed an opposition on May 2, 2014, Opposition, ECF

6   No. 36, and Wells Fargo filed a reply on May 9, 2014, Reply, ECF No. 38.

7       On June 2, 2014, the parties stipulated to dismiss Wells Fargo Home Mortgage without prejudice

8   from this action, as it is a division of Wells Fargo, not a separate legal entity.  See Stipulation and

9   Order, ECF No. 41.

10                                           **ANALYSIS**

11   **I.  LEGAL STANDARD**

12       Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain

13   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

14   complaint must therefore provide a defendant with "fair notice" of the claims against it and the

15   grounds for relief.  *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and

16   citation omitted).

17       A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does

18   not contain enough facts to state a claim to relief that is plausible on its face.  *See id.* at 570.  "A

19   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

20   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,*

21   129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,'

22   but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting

23   *Twombly,* 550 U.S. at 557.).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

24   not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

25   'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the

26   elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief

27   above the speculative level."  *Twombly,* 550 U.S. at 555 (internal citations and parentheticals

28   omitted).

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true

2  and construe them in the light most favorable to the plaintiff.  *See id.* at 550; *Erickson v. Pardus*, 551

3  U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

4    If the court dismisses the complaint, it should grant leave to amend even if no request to amend

5  is made "unless it determines that the pleading could not possibly be cured by the allegation of other

6  facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc.*

7  *v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).  But when a party

8  repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend.  *See*

9  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where

10  district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim

11  with leave to amend).

## II. DISCUSSION

### A. The Fund's Second Claim

14    The Fund's second claim is for violation of California Civil Code § 2943.  Section 2943(b)(1)

15  provides that

> A beneficiary, or his or her authorized agent, shall, within 21 days of the receipt of a
> written demand by an entitled person or his or her authorized agent, prepare and
> deliver to the person demanding it a true, correct, and complete copy of the note or
> other evidence of indebtedness with any modification thereto, and a beneficiary
> statement.

19  Section 2943(a)(1) defines a "beneficiary" as "a mortgagee or beneficiary of a mortgage or deed of

20  trust, or his or her assignees."  And Section 2943(a)(2) defines a "beneficiary statement" as "a

21  written statement showing"

> (A) The amount of the unpaid balance of the obligation secured by the mortgage or
> deed of trust and the interest rate, together with the total amounts, if any, of all
> overdue installments of either principal or interest, or both.

24    (B) The amounts of periodic payments, if any.

25    (C) The date on which the obligation is due in whole or in part.

> (D) The date to which real estate taxes and special assessments have been paid to the
> extent the information is known to the beneficiary.

> (E) The amount of hazard insurance in effect and the term and premium of that
> insurance to the extent the information is known to the beneficiary.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(F) The amount in an account, if any, maintained for the accumulation of funds with which to pay taxes and insurance premiums.

(G) The nature and, if known, the amount of any additional charges, costs, or expenses paid or incurred by the beneficiary which have become a lien on the real property involved.

(H) Whether the obligation secured by the mortgage or deed of trust can or may be transferred to a new borrower.

And Section 2943(a)(4) defines an "entitled person" as

the trustor or mortgagor of, or his or her successor in interest in, the mortgaged or trust property or any part thereof, any beneficiary under a deed of trust, any person having a subordinate lien or encumbrance of record thereon, the escrowholder licensed as an agent pursuant to Division 6 (commencing with Section 17000) of the Financial Code, or the party exempt by virtue of Section 17006 of the Financial Code who is acting as the escrowholder.

Section 2943(e)(4) supplies the Fund's right of action.  It provides that

If a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300). Each failure to prepare and deliver the statement, occurring at a time when, pursuant to this section, the beneficiary is required to prepare and deliver the statement, creates a separate cause of action, but a judgment awarding an entitled person a forfeiture, or damages and forfeiture, for any failure to prepare and deliver a statement bars recovery of damages and forfeiture for any other failure to prepare and deliver a statement, with respect to the same obligation, in compliance with a demand therefor made within six months before or after the demand as to which the award was made.  For the purposes of this subdivision, "willfully" means an intentional failure to comply with the requirements of this section without just cause or excuse.

(Emphasis added).

Wells Fargo argues that the Fund's claim fails because it does not allege that Wells Fargo's failure to provide a beneficiary statement was "willful."  Motion, ECF No. 34 at 8-9.  Wells Fargo is right.  The Fund does not allege that Wells Fargo willfully failed to provide a beneficiary statement; instead, it alleges that Wells Fargo simply failed to do so.  *See* SAC ¶ 22, ECF No. 33 at 4.

The Fund argues that it does not need to explicitly allege that Wells Fargo willfully failed to provide a beneficiary statement because Wells Fargo "repeatedly failed to provide the information even after confirming receipt of the multiple requests and the authorization."  Opposition, ECF No. 36 at 3.  The Fund's argument is both confusing and unavailing.  First, nowhere does the Fund allege

UNITED STATES DISTRICT COURT
For the Northern District of California

1  that it made multiple requests for a beneficiary statement.  As the court recounted above, in its

2  general allegations, the Fund alleges that it made "numerous" and "repeated" requests "for a

3  reinstatement quote and a payoff demand" for the First Loan, not a beneficiary statement.  SAC ¶ 8,

4  ECF No. 33 at 2.  And in its allegations that are specific to its second claim, the Fund alleges only

5  that it sent 1 written demand for a beneficiary statement on March 13, 2013.  *Id.* ¶ 20, ECF No. 33 at

6  3-4.  In addition, despite what it argues now, nowhere in its Second Amended Complaint does the

7  Fund allege that Wells Fargo confirmed receipt of any written demand.  *See generally id.*  Although

8  the Fund is correct that it is not necessarily dispositive that it fails to allege the word "willful"

9  because it is the facts to support Wells Fargo's willfulness that are important, *see* Opposition, ECF

10  No. 36 at 3, the court does not believe that the Fund sufficiently alleges such facts in its Second

11  Amended Complaint.  Accordingly, the Fund's second claim fails.  Because the court cannot rule out

12  the possibly that this insufficiency could be cured by the allegation of other facts, the court

13  **DISMISSES WITHOUT PREJUDICE** the Fund's second claim.[5]

14  **B. The Fund's Third Claim**

15  The Fund's third claim is for violation of 12 C.F.R. § 1026.36.  Under the version of Section

16  1026.36 that was in effect[6] at the relevant time, *see* SAC ¶ 27, ECF No. 33 at 4,

17  In connection with a consumer credit transaction secured by a consumer's principal
   dwelling, no servicer shall . . . [f]ail to provide, within a reasonable time after
18  receiving a request from the consumer or any person acting on behalf of the
   consumer, an accurate statement of the total outstanding balance that would be
19  required to satisfy the consumer's obligation in full as of a specified date.

20  12 C.F.R. § 1026.36(c)(1)(iii) (2013).  The regulation does not define what a "reasonable time" is,

21

22
   _____

23      [5] Wells Fargo makes two other arguments in its reply that the court addresses briefly.  First,
   Wells Fargo argues, because of a statement the Fund made in its opposition, that the Fund did not
24  allege, with respect to its second claim, that Wells Fargo failed to provide it with a "payoff
   statement."  Reply, ECF No. 38 at 3.  This is true, *see* SAC ¶ 19-24, and for that reason, it does not
25  matter that the Fund suggested in its opposition that it had.  Second, Wells Fargo, argues for the first
   time that the Fund's second claim fails because the Fund is not an "entitled person" as defined by
26  Section 2943(a)(4).  Reply, ECF No. 38 at 3-4.  Because Wells Fargo did not make this argument in
   its motion, and therefore the Fund did not have a chance to respond to it, the court does not consider
27  it here.

28      [6] 12 C.F.R. § 1026.36 was amended effective January 14, 2014.

but it does define several other relevant terms. A "consumer" is "a cardholder or natural person to whom consumer credit is offered or extended." 12 C.F.R. § 1026.2(a)(11). "Consumer credit" "means credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 1026.2(a)(12). A "dwelling" is "a residential structure that contains one to four units, whether or not that structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence." 12 C.F.R. § 1026.2(a)(19). A "person" is "a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit." 12 C.F.R. § 1026.2(a)(22). And a "servicer" is "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.2(b).

The Fund alleges that it "sent numerous written demands to [Wells Fargo] for a payoff statement," and that Wells Fargo "failed to provide a payoff statement to [it] until October 11, 2013, seven months after the initial request." SAC ¶¶ 26-27, ECF No. 33 at 4. Wells Fargo argues that the Fund's claim fails because the Fund is not a "consumer," there is no transaction secured by its "principal dwelling," and it did not enter into any "consumer credit transaction" with the Fund. Motion, ECF No. 34 at 9-10. Wells Fargo's larger point is that any rights provided by Section 1026.36(c)(iii) belong to the Rijhwanis, not the Fund. *See id.* The Fund argues in response that Wells Fargo's points do not matter because it was acting on behalf of the Rijhwanis and that this is evidenced by the Rijhwanis' execution of "two 'Authorization to Inquire' forms prepared by Wells Fargo authorizing [the Fund] to assist [the Rijhwanis] in obtaining information about their loans. SAC ¶ 7, ECF No. 33 at 2; *see* Opposition, ECF No. 36 at 3. Wells Fargo counters that the Fund does not specifically allege that it was acting as the Rijhwanis' agent and that such an allegation would be specious because the Fund, which purchased the Rijhwanis' foreclosed-upon Property and entered into a stipulation with them to get them out of the Property, obviously was acting in its own interests, rather than in the Rijhwanis' interest. *See* Reply, ECF No. 38 at 4-5. Wells Fargo also points out that the Rijhwanis did not execute the two Authorization to Inquire forms until April 9, 2013, *see* SAC ¶ 7, ECF No. 33 at 2, but the Fund alleges that it requested the payoff statement in

March 2013, *see id.* ¶¶ 26-27, ECF No. 33 at 4 (alleging that Wells Fargo "failed to provide a payoff statement to [it] until October 11, 2013, <u>seven months after the initial request</u>") (emphasis added).

The Fund's allegations are not a model of clarity.  *Compare* SAC ¶¶ 26-27, ECF No. 33 at 4 (alleging that Wells Fargo did not provide a "payoff statement") *with id.* ¶ 28, ECF No. 33 at 4 (alleging that Wells Fargo did not provide a "beneficiary statement"); *see also id.* ¶ 27, ECF No. 33 at 4 (alleging that "[m]ore than 7 business days have passed since [the Fund] made a written demand for a payoff statement," even though it does not appear that there is any provision requiring one within 7 business days); *id.* ¶ 28, ECF No. 33 at 4 (alleging that "Defendants" have suffered damages).  And, the court does not believe that the Fund has sufficiently alleged that it was "acting on behalf of" of the Rijhwanis, as Section 1026.36 requires.  That said, given the allegations already made, the court does not believe that it impossible for the Fund to do so, and the court is not persuaded that Section 1026.34 cannot apply to the Fund at all (as Wells Fargo argues) because the regulation states only that the requests for information be made "<u>in connection with</u> a consumer credit transaction secured by a consumer's principal dwelling."  Accordingly, the court **DISMISSES WITHOUT PREJUDICE** the Fund's third claim.

## C.  The Fund's Fourth Claim

The Fund's fourth claim is for violation of 12 U.S.C. § 2605.  It alleges that it "sent numerous qualified written requests for a payoff statement," that Wells Fargo "failed to provide a payoff statement to [it] until October 11, 2013, seven months after the initial request," and that "[d]ue to [Wells Fargo's] failure to timely provide a beneficiary statement, Defendant's [sic] have suffered damages in an amount to be proven at trial."  SAC ¶¶ 31-33, ECF No. 33 at 4-5.

Wells Fargo first points out that presumably the Fund alleges a violation of Section 2605(e), which is titled "Duty of loan servicer to respond to borrower inquiries."  Section 2605(e)(1)(A) provides that

> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

Section 2605(e)(2) then provides that

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

For purposes of this statute, a "qualified written request" is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that "includes, or otherwise enables the servicer to identify, the name and account of the borrower" and also "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 C.F.R. § 2605(e)(1)(B).

Wells Fargo then makes several arguments. *See* Motion, ECF No. 34 at 10-12.  It argues that Section 2605(e) "governs inquiries relating to loan servicing," not "payoff requests," and "primarily seeks to address errors in the servicing of a borrower's account." As it did with respect to Section 1026.36, Wells Fargo argues that Section 2605(e) only applies to the Rijhwanis (who are the "borrowers"), not the Fund.  And Wells Fargo also argues that the Fund does not sufficiently allege damages.  In response, the Fund argues that it sufficiently alleges that it sent a "qualified written request," it was acting as an agent for the Rijhwanis, and it sufficiently alleges damages as Section 2605(f) allows for statutory damages and attorney's fees, which it alleges.  *See* Opposition, ECF No. 36 at 4.  In reply, Wells Fargo argues that Section 2605(f) makes clear that any claim for a violation

1   of Section 2605 accrues to the borrower, not an agent of the borrower.  *See* Reply, ECF No. 38 at 6.

2       The court agrees with Wells Fargo that under Section 2605(f), the Fund does not have standing

3   to bring its claim.  Section 2605(f) provides that "[w]hoever fails to comply with any provision of

4   this section shall be liable <u>to the borrower</u> for each such failure . . . ."  (Emphasis added).  Thus,

5   even if the Fund was acting as the Rijhwanis' agent, only the Rijhwanis would have standing to

6   bring a claim for violation of Section 2605(e).  Accordingly, the Fund's fourth claim is

7   **DISMISSED WITH PREJUDICE**.

8       **D. The Fund's Fifth Claim**

9       The Fund's fifth claim is for violation of California Business and Professions Code § 17200.

10  Section 17200, also known as California's "Unfair Competition Law," prohibits "any unlawful,

11  unfair or fraudulent" business practices.  "Since section 17200 is [written] in the disjunctive, it

12  establishes three separate types of unfair competition.  The statute prohibits practices that are either

13  'unfair'" or 'unlawful,' or 'fraudulent.'"  *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496

14  (2003); *see also Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163,

15  180 (1999).  Here, the Fund alleges that Wells Fargo engaged in "unfair" business practices.  SAC ¶

16  37, ECF No. 33 at 5.

17      There is disagreement among California courts regarding the definition of "unfair" business

18  practices in consumer cases such as this.  As the district court in *Phipps v. Wells Fargo* explained,

19  there is a split of authority that has resulted in three different tests:

20          The test applied in one line of cases requires "that the public policy which is a
            predicate to a consumer unfair competition action under the 'unfair' prong of the
21          UCL must be tethered to specific constitutional, statutory, or regulatory provisions."
            *Drum*, 182 Cal. App. 4th at 256, 106 Cal. Rptr.3d 46 (citing *Bardin v.*
22          *Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260–1261, 39 Cal. Rptr.3d 634
            (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th at 581, 595–596, 101 Cal.
23          Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal. App. 4th 845, 854, 128
            Cal. Rptr.2d 389 (2002).
24
            . . .
25
            A second line of cases applies a test to determine whether the alleged business
26          practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to
            consumers and requires the court to weigh the utility of the defendant's conduct
27          against the gravity of the harm to the alleged victim."  *Drum*, 182 Cal. App. 4th at
            257, 106 Cal. Rptr.3d 46 (citing *Bardin*, 136 Cal. App. 4th at 1260, 39 Cal. Rptr.3d
28          634; *Davis*, 179 Cal. App. 4th at 594–595, 101 Cal. Rptr.3d 697)).

UNITED STATES DISTRICT COURT
For the Northern District of California

1     . . .

2          The test applied in a third line of cases draws on the definition of "unfair" in

3     section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and
      requires that "(1) the consumer injury must be substantial; (2) the injury must not be

4     outweighed by any countervailing benefits to consumers or competition; and (3) it
      must be an injury that consumers themselves could not reasonably have avoided."

5     *Drum*, 182 Cal. App. 4th at 257, 106 Cal. Rptr.3d 46 (citing *Davis*, 179 Cal. App. 4th
      597–598, 101 Cal. Rptr.3d 697; *Camacho v. Automobile Club of Southern California*,

6     142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr.3d 770 (2006)).

7     No. CV F 10–2025 LJO SKO, 2011 WL 302803, at *16 (E.D. Cal. Jan. 27 2011).

8          Wells Fargo argues that the Fund's claim fails because the Fund bases it on the Fund's statutory

9     claims (Claims 1 through 4). Motion, ECF No. 34 at 13. But this misreads the Fund's claim, which

10    is brought under the "unfair" prong, see SAC ¶ 37, ECF No. 33 at 5; id., ECF No. 33 at 5 (title of

11    the fifth claim states that it is for "Unfair Business Practices"), and assumes that the Fund's claim is

12    brought under the "unlawful prong," of the UCL. Wells Fargo also argues that to state a UCL

13    violation, a plaintiff must allege ongoing unlawful, unfair, or fraudulent conduct, but here Wells

14    Fargo has provided the Fund with the information it sought. Motion, ECF No. 34 at 12-13. But as

15    the Fund points out, while ongoing conduct is necessary for a plaintiff to seek injunctive relief, it is

16    not seeking injunctive relief. Wells Fargo also says that the UCL allows a plaintiff to recover only

17    injunctive relief or restitution and argues that the Fund seeks neither of these forms of relief. But the

18    Fund points out that its damages are based on money that it paid to Wells Fargo in the form of

19    interest and fees, which can be considered restitutionary in character. Wells Fargo cites no authority

20    rebutting this point. Accordingly, the Fund's fifth claim **SURVIVES**.

21                                    **CONCLUSION**

22         Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's

23    motion. The Fund's first and fifth claims **SURVIVE**, its second and third claims are **DISMISSED**

24    **WITHOUT PREJUDICE**, and its fourth claim is **DISMISSED WITH PREJUDICE**. The Fund

25    may file a Third Amended Complaint no later than June 24, 2014. The court urges the Fund to be as

26    clear and precise in its allegations as it can.

27         This disposes of ECF No. 34.

28

1    **IT IS SO ORDERED.**

2    Dated: June 10, 2014

     _____
3    LAUREL BEELER
     United States Magistrate Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California