UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| US DISTRESSED MORTGAGE FUND, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>WELLS FARGO BANK, N.A., and REGIONAL TRUSTEE SERVICES CORPORATION, WELLS FARGO HOME MORTGAGE, INC., a division of WELLS FARGO BANK, N.A. a National Association; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br>_____/ | No. C 13-05177-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART WELLS FARGO'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>[Re: ECF No. 46] |

## INTRODUCTION

Plaintiff US Distressed Mortgage Fund, LLC (the "Fund") sued Wells Fargo Bank, N.A. ("Wells Fargo") and Wells Fargo Home Mortgage, Inc., a division of Wells Fargo Bank, N.A. ("Wells Fargo Home Mortgage"). *See* Third Amended Complaint ("TAC"), ECF No. 44.[1] The parties stipulated to the dismissal of Wells Fargo Home Mortgage, Stipulation, ECF No. 41, and now Wells Fargo moves to dismiss the Fund's Third Amended Complaint. *See* Motion, ECF No. 46. Pursuant to Civil Local Rule 7-1(b), the court finds this matter suitable for determination without oral argument and vacates the September 4, 2014 hearing. Upon consideration of the Third Amended Complaint, the briefs

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 13-05177 LB
ORDER RE MOTION TO DISMISS

submitted, and the applicable legal authority, the court **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's motion to dismiss.[2]

## STATEMENT

**I. FACTS**[3]

---

[2] The Fund and Wells Fargo have consented to the undersigned's jurisdiction. Consent (Wells Fargo), ECF No. 8; Consent (Fund), ECF No. 12.

[3] The facts are taken from the Third Amended Complaint and the documents submitted by Wells Fargo that are subject to judicial notice. Wells Fargo asks the court to take judicial notice of the following documents: (1) a Deed of Trust, dated January 12, 2000, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2000-005316 on January 13, 2000; (2) an Open End Deed of Trust, dated July 2, 2007, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2007-104376 on July 11, 2007; (3) a Certificate of Corporate Existence, dated April 21, 2006, that was issued by the Office of Thrift Supervision, Department of the Treasury ("OTS"); (4) a letter on the letterhead of the OTS, dated November 19, 2007, authorizing a name change from World Savings Bank, FSB to Wachovia Mortgage, FSB; (5) the Charter of Wachovia Mortgage, FSB, effective December 31, 2007, and signed by the Director of the OTS, reflecting in Section 4 that Wachovia Mortgage, FSB was subject to the Home Owner's Loan Act and the OTS; (6) the Official Certification of the Comptroller of the Currency ("OCC") stating that effective November 1, 2009, Wachovia Mortgage FSB converted to Wells Fargo Bank Southwest, N.A., which then merged with and into Wells Fargo Bank, N.A.; (7) a printout from the website of the Federal Deposit Insurance Corporation, dated December 15, 2010, showing the history of Wachovia Mortgage, FSB; (8) a Notice of Default, dated February 24, 2012, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2012-026085 on February 28, 2012; (9) a Notice of Trustee's Sale, dated May 17, 2012, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2012-074875 on May 30, 2012; (10) a Trustee's Deed Upon Sale, dated March 4, 2013, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2013-040845 on March 15, 2013; (11) a Notice of Default, dated May 31, 2013, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2013-083249 on June 4, 2013; and (12) a Notice of Trustee's Sale, dated September 4, 2013, that was recorded in the Official Records of the San Mateo County Recorder's Office as Document No. 2013-132311 on September 11, 2013. *See* Defendant's Request for Judicial Notice ("RJN"), Exs. A-L, ECF No. 47.

The court may take judicial notice of matters of public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). Because Exhibits A-L are public records, the court may take judicial notice of the undisputed facts contained in them. *See* Fed. R. Evid. 201(b); *Hotel Employees & Rest. Employees Local 2 v. Vista Inn Mgmt. Co.*, 393 F. Supp. 2d 972, 978 (N.D. Cal. 2005); *see also Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 264-67 (2011). Moreover, the Fund has not objected to the court's consideration of any these documents or challenged any of the

On or about January 13, 2000, World Savings Bank, FSB ("World Savings"), a federal savings bank, made a loan of $431,200 to Manoj Rijhwani and Lisa Rijhwani. TAC ¶ 5, ECF No. 44 at 2; RJN, Ex. A, ECF No. 47 at 6. The loan was consummated through a promissory note and was secured by a deed of trust recorded against the Rijhwanis' home located at 1044 Rudder Lane, Foster City, California (the "Property"). TAC ¶ 5, ECF No. 44 at 2; RJN, Ex. A, ECF No. 47 at 6. For purposes of this order, this loan will be referred to as the "First Loan" and this deed will be referred to as the "First Deed."

On or about July 5, 2007, the Rijhwanis took out a $77,845 equity line of credit with World Savings to refinance the Property. TAC ¶ 5, ECF No. 44 at 2; RJN, Ex. B, ECF No. 47 at 31. This loan also was consummated through a promissory note and was secured by a deed of trust recorded against the Property. TAC ¶ 5, ECF No. 44 at 2; RJN, Ex. B, ECF No. 47 at 31. For purposes of this order, this loan will be referred to as the "Second Loan" and this deed will be referred to as the "Second Deed."

On December 31, 2007, World Savings changed its name to Wachovia Mortgage, FSB ("Wachovia"), and remained a federal savings bank. RJN, Exs. D-E, ECF No. 47 at 55-60. In November 2009, Wachovia changed its name to Wells Fargo Bank Southwest, N.A., became a national association (and ceased being a federal savings bank), and immediately merged into Wells Fargo, which was and is a national association. RJN, Exs. F-G, ECF No. 47 at 61-64. The Fund alleges that both the Rijhwanis' "mortgage[s]" and/or the" promissory note[s] and deed[s] of trust" underlying those loans were eventually "transferred" to Wells Fargo. *See* TAC ¶ 5, ECF No. 44 at 2.

In 2011, the Rijhwanis defaulted on the First Loan and the Second Loan. TAC ¶ 6, ECF No. 44 at 2. A Notice of Default relating to the Second Loan and was recorded on February 28, 2012. RJN, Ex. H, ECF No. 47 at 65-69. A Notice of Trustee's Sale relating to the Second Deed was recorded on May 30, 2012. RJN, Ex. I, ECF No. 47 at 71-72. On March 4, 2013, "Wells Fargo completed a foreclosure" under the Second Deed and a Trustee's Deed Upon Sale was recorded on March 15,

---

facts in them. *See generally* Opposition, ECF No. 49. Accordingly, the court takes judicial notice of Exhibits A through L (numbered 1-12 above) to Wells Fargo's request.

1  2013. TAC ¶ 6, ECF No. 44 at 2; RJN, Ex. J, ECF No. 47 at 73-76. The Fund was the successful
2  bidder with a bid of $231,600. TAC ¶ 6, ECF No. 44 at 2; RJN, Ex. J, ECF No. 47 at 73-76. The
3  amount owed on the Second Loan at the time of the sale was $85,468.94. TAC ¶ 6, ECF No. 44 at
4  2; RJN, Ex. J, ECF No. 47 at 73-76.

5  The Rijhwanis, however, had defaulted on the First Loan, too, so after purchasing the Property,
6  the Fund began taking steps to find out how much money was still owed on it. *See* TAC ¶¶ 7-9,
7  ECF No. 44 at 2. On March 13, 2013, the Fund contacted Wells Fargo's foreclosure department to
8  request a beneficiary statement. *Id.* ¶ 7. The Fund was informed it would need to fax proof of the
9  Trustee's Deed Upon Sale, the Sale Receipt, and a written request for the payoff and reinstatement
10  amounts to (210) 509-1174. *Id.* The Fund faxed the request to the number provided. *Id.*

11  On March 26, 2013, the Fund again contacted Wells Fargo again to check on the status of the
12  beneficiary statement. *Id.* ¶ 8. As before, the Fund was told to fax the paperwork to (210) 509-
13  1174. *Id.* The Fund faxed the paperwork to that number and also mailed it to Wells Fargo at 4101
14  Wiseman Blvd., San Antonio, Texas 78251. The Fund contacted Wells Fargo again on April 8,
15  2013, for an update on the status of the beneficiary statement. *Id.* ¶ 9. Wells Fargo informed the
16  Fund that it had received the March 13, 2013 requests and still were processing them. *Id.*

17  On April 9, 2013, the Rijhwanis "executed two Authorization to Inquire forms prepared by
18  Wells Fargo authorizing [the Fund] to assist [the Rijhwanis] in obtaining information about their
19  loans. *Id.* ¶ 10. The Fund contacted Wells Fargo again on April 12, 2013. *Id.* ¶ 11. The Fund
20  spoke with an Agent Adriana who told it to call back on April 15 for a status update. *Id.* The Fund
21  contacted Wells Fargo again on April 15. *Id.* During that call with an Agent Johnny, the Fund was
22  informed that Wells Fargo had received the authorization and would need five to seven days to
23  verify it. *Id.*

24  On April 22, 2013, the Fund contacted Wells Fargo once again. *Id.* ¶ 12. This time, it spoke
25  with an Agent Armon, who confirmed that the authorization had been approved. *Id.* He asked the
26  Fund to resend all of the information it had previously submitted, and the Fund complied. *Id.* On
27  April 29, 2013, the Fund contacted Wells Fargo again, and spoke with an Agent Natalee. *Id.* ¶ 13.
28  She told the Fund to send its request yet again. *Id.* Agent Natalee provided the Fund with the

estimated reinstatement amount but she would not provide the payoff amount. *Id.* The Fund contacted Wells Fargo again on May 6, 2013. *Id.* ¶ 14. This time, the Fund was informed that Wells Fargo would not provide any payoff information. *Id.*

On May 20, 2013, the Rijhwanis and the Fund entered into a stipulation regarding possession of the Property. *Id.* ¶ 15, ECF No. 44 at 3. In that stipulation, the Rijhwanis agreed to vacate the Property by July 31, 2013. *Id.* Since that time, the Fund has been in possession of the Property. *Id.*

On June 4, 2013, Wells Fargo, through its agent, Regional Trustee Services Corporation ("RTSC"), which is not a party to this ligation,[4] recorded a Notice of Default under the First Loan. TAC ¶ 16, ECF No. 44 at 3; RJN, Ex. K, ECF No. 47 at 77-81. This notice stated that the amount owed on the First Loan as of May 31, 2013 was $129,063.76. RJN, Ex. K, ECF No. 47 at 77-81. A Notice of Trustee's Sale was recorded on September 11, 2013. *See* TAC ¶ 16, ECF No. 44 at 3; RJN, Ex. L, ECF No. 47 at 83-84.

On October 11, 2013, the Fund tendered the funds necessary to pay the outstanding balance on the loan. TAC ¶ 17, ECF No. 44 at 3. The payoff was processed and the trustee's sale was cancelled. *Id.*

## II. PROCEDURAL HISTORY

The Fund originally filed suit on October 8, 2013 in San Mateo County Superior Court. *See* Notice of Removal, ECF No. 1. On November 6, 2013, Wells Fargo removed the action to this court on diversity of citizenship grounds. *See id.* The Fund filed amended complaints on December 12, 2013, and April 4, 2014. *See* First Amended Complaint, ECF No. 15; Second Amended Complaint ("SAC"), ECF No. 33.

On April 18, 2014, Wells Fargo moved to dismiss the second, third, fourth, and fifth claims in the SAC. *See* Motion to Dismiss SAC, ECF No. 34. The motion was fully briefed. *See* Opp'n to Motion to Dismiss SAC, ECF No. 36; Reply Supp. Motion to Dismiss SAC, ECF No. 38. The court granted in part and denied in part the motion to dismiss on June 10, 2014. *See* Order, ECF No. 43.

On June 20, 2014, the Fund filed the operative TAC. *See* TAC, ECF No. 44. It claims violations

---

[4] The Fund named RTSC as a defendant to this action in the original complaint, but the Fund did not name it as a defendant in any subsequent, amended complaints.

of the following statutes and regulations: (1) California Civil Code § 2941; (2) California Civil Code § 2943; (3) 12 C.F.R. 1026.36; and (4) California Business and Professions Code § 17200. *See id.* ¶¶ 19-40, ECF No. 44 at 4-6.

Wells Fargo moved to dismiss all of the claims in the TAC on July 21, 2014. Motion to Dismiss TAC ("Motion"), ECF No. 46. The Fund filed an opposition on August 4, 2013, Opp'n, ECF No. 49, and Wells Fargo filed a reply on August 11, 2014, Reply, ECF No. 50.

**ANALYSIS**

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint therefore must provide a defendant with "fair notice" of the claims against it and the grounds for relief. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation and citation omitted).

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)). But when a party repeatedly fails to cure deficiencies, the court may order dismissal without leave to amend. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992) (affirming dismissal with prejudice where district court had instructed *pro se* plaintiff regarding deficiencies in prior order dismissing claim with leave to amend).

## II. DISCUSSION

### A. The Fund's First Claim

The Fund's first claim is for violation of California Civil Code section 2941. Wells Fargo argues that the section 2941 claim fails because the facts alleged do not show a statutory violation. *See* Motion, ECF No. 46 at 7-9. The court agrees.

In relevant part, section 2941 provides that

(a) Within 30 days after any mortgage has been satisfied, the mortgagee or the assignee of the mortgagee shall execute a certificate of the discharge thereof, as provided in Section 2939, and shall record or cause to be recorded in the office of the county recorder in which the mortgage is recorded. The mortgagee shall then deliver, upon the written request of the mortgagor or the mortgagor's heirs, successors, or assignees, as the case may be, the original note and mortgage to the person making the request.

(b)(1) Within 30 calendar days after the obligation secured by any deed of trust has been satisfied, the beneficiary or the assignee of the beneficiary shall execute and deliver to the trustee the original note, deed of trust, request for a full reconveyance, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.

   (A) The trustee shall execute the full reconveyance and shall record or cause it to be recorded in the office of the county recorder in which the deed of trust is recorded within 21 calendar days after receipt by the trustee of the original note, deed of trust, request for a full reconveyance, the fee that may be charged pursuant to subdivision (e), recorder's fees, and other documents as may be necessary to reconvey, or cause to be reconveyed, the deed of trust.

Cal. Civ. Code § 2941.

Here, the relevant allegations are the following: (1) the Fund satisfied the obligations under the First Loan on October 11, 2013, (2) Wells Fargo did not record the full reconveyance of the deed of trust until November 22, 2013, and (3) because the deed of trust was not reconveyed within 30 days

of the Trust satisfying the obligations under the Note and Deed of Trust, Wells Fargo violated section 2941. TAC ¶¶ 20-23, ECF No. 44 at 4.

The problem with this theory is that subsection 2941(b)[5] does not require Wells Fargo to reconvey the deed of trust within 30 days after the obligation is satisfied. As the beneficiary under the First Deed, when the Fund satisfied the obligation, Wells Fargo had 30 days to "execute and deliver *to the trustee*" the documents necessary to reconvey the Property. *See* Cal. Civ. Code § 2943(b)(1) (emphasis added). The Trustee had an additional 21 days from when it received the documents from Wells Fargo to execute and record the conveyance. *Id.* § 2943(b)(1)(A). Thus, the fact that Wells Fargo did not reconvey the First Deed until 42 days after the Fund paid off loan does not mean that it violated the statute.

In its opposition brief, the Fund explains that its theory is that Wells Fargo failed to deliver the reconveyance documents to the Trustee within the 30 days required by the statute. Opp'n, ECF No. 49 at 3. Instead, the reconveyance was recorded within the 51-day statutory period because the trustee acted quickly at the Fund's urging. *Id.* That is not what the TAC alleges. *See* TAC ¶¶ 19-24. Regardless, the Fund provides no factual support for this argument. Accordingly, the court grants Wells Fargo's motion to dismiss this claim without prejudice.

**B. The Fund's Second Claim**

The Fund's second claim is for a violation of California Civil Code section 2943. Section 2943(b)(1) provides that

> A beneficiary, or his or her authorized agent, shall, within 21 days of the receipt of a written demand by an entitled person or his or her authorized agent, prepare and deliver to the person demanding it a true, correct, and complete copy of the note or other evidence of indebtedness with any modification thereto, and a beneficiary statement.

Section 2943(a)(1) defines a "beneficiary" as "a mortgagee or beneficiary of a mortgage or deed of trust, or his or her assignees." And Section 2943(a)(2) defines a "beneficiary statement" as "a

---

[5] The TAC does not specify the subsection that is the basis for the Fund's § 2941 claim. *See* TAC ¶¶ 19-24. As the statutory language above indicates, subsection 2941(a) applies to mortgages and subsection 2941(b) applies to obligations secured by a deed of trust. Because the Property was secured by a deed of trust, subsection 2941(b) applies. The Fund concedes this in its opposition brief. *See* Opp'n, ECF No. 49 at 3.

C 13-05177 LB
ORDER RE MOTION TO DISMISS        8

written statement showing"

> (A) The amount of the unpaid balance of the obligation secured by the mortgage or deed of trust and the interest rate, together with the total amounts, if any, of all overdue installments of either principal or interest, or both.
>
> (B) The amounts of periodic payments, if any.
>
> (C) The date on which the obligation is due in whole or in part.
>
> (D) The date to which real estate taxes and special assessments have been paid to the extent the information is known to the beneficiary.
>
> (E) The amount of hazard insurance in effect and the term and premium of that insurance to the extent the information is known to the beneficiary.
>
> (F) The amount in an account, if any, maintained for the accumulation of funds with which to pay taxes and insurance premiums.
>
> (G) The nature and, if known, the amount of any additional charges, costs, or expenses paid or incurred by the beneficiary which have become a lien on the real property involved.
>
> (H) Whether the obligation secured by the mortgage or deed of trust can or may be transferred to a new borrower.

"Delivery" is defined in section 2943(a)(3) as

> depositing or causing to be deposited in the United States mail an envelope with postage prepaid, containing a copy of the document to be delivered, addressed to the person whose name and address is set forth in the demand therefor. The document may also be transmitted by facsimile machine to the person whose name and address is set forth in the demand therefor.

And Section 2943(a)(4) defines an "entitled person" as

> the trustor or mortgagor of, or his or her successor in interest in, the mortgaged or trust property or any part thereof, any beneficiary under a deed of trust, any person having a subordinate lien or encumbrance of record thereon, the escrowholder licensed as an agent pursuant to Division 6 (commencing with Section 17000) of the Financial Code, or the party exempt by virtue of Section 17006 of the Financial Code who is acting as the escrowholder.

A beneficiary faced with a demand for a beneficiary statement "may, before delivering a statement, require reasonable proof that the person making the demand is, in fact, an entitled person or an authorized agent of an entitled person." *Id.* § 2943(e)(4). The subsection provides a nonexclusive list of documents that constitute reasonable proof as to the identity of an agent or successor in interest. *Id.*

Finally, section 2943(e)(4) supplies the Fund's right of action. It provides that

> If a beneficiary for a period of 21 days after receipt of the written demand willfully fails to prepare and deliver the statement, he or she is liable to the entitled person for all damages which he or she may sustain by reason of the refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled person the sum of three hundred dollars ($300). Each failure to prepare and deliver the statement, occurring at a time when, pursuant to this section, the beneficiary is required to prepare and deliver the statement, creates a separate cause of action, but a judgment awarding an entitled person a forfeiture, or damages and forfeiture, for any failure to prepare and deliver a statement bars recovery of damages and forfeiture for any other failure to prepare and deliver a statement, with respect to the same obligation, in compliance with a demand therefor made within six months before or after the demand as to which the award was made. For the purposes of this subdivision, "willfully" means an intentional failure to comply with the requirements of this section without just cause or excuse.

Wells Fargo argues that the Fund's claim fails because it does not allege (1) that the Fund was an "entitled person," (2) that Wells Fargo's failure to provide a beneficiary statement was "willful," (3) to the extent the Fund acted as the Rijhwanis' agent it cannot sue under section 2943, and (4) facts that would support its request for punitive damages. Motion, ECF No. 46 at 9-13.

**1. The Fund Sufficiently Alleges it was an Entitled Person.**

The first issue is whether the Fund alleges that it was an "entitled person" under the statute and the effect that has on the claim. The TAC alleges that the Fund is an entitled person "as it is the successor in interest of mortgagor and is the owner of the Property."[6] TAC ¶ 27, ECF No. 44 at 4.

Neither party provides any legal analysis of whether the Fund is the Rijhwanis' successor in interest for purposes of section 2943 and the answer is not immediately apparent. *See* Motion at 9-11; Opp'n at 3; Reply at 3. Without citing any authority, the Fund argues that "[b]y definition, a successor in interest of a party who was the owner party is the present owner of the property." Opp'n at 3. That is not necessarily so. For example, with regard to the right of redemption, "[t]he purchaser of the property at the foreclosure sale is not a 'successor-in-interest' and cannot redeem." 4 Harry D. Miller & Marvin D. Starr, *Cal. Real Est.* § 10:276 (3d ed. 2014) (collecting cases).

Similarly, Wells Fargo's strongest argument is that the Fund "was not the successor in interest to the mortgagor since the mortgagor did not transfer any interests in the Property to plaintiff." Reply at 3. Instead, the Property was sold at a trustee's sale. *Id.* But Wells Fargo cites no authorities to

---

[6] The allegations suggest that the Rijhwanis were trustors, not mortgagors. *See supra,* Statement. The distinction does not alter the analysis.

1  support this proposition. *Id.* And in an analogous situation, the Fund would be a successor in
2  interest. *See* Miller & Starr, *Cal. Real Est.* § 10:276 ("When the foreclosure sale under a junior lien
3  precedes the foreclosure sale under a senior lien, the purchaser at the sale under the junior lien is a
4  successor-in-interest to the trustor and is entitled to redeem.").

5  In sum, the parties fail to provide the court with a sufficient basis for deciding the issue.
6  Resolving all inferences in the Fund's favor, the court finds that the TAC plausibly alleges that the
7  Fund is the Rijhwanis' successor in interest (and therefore an entitled person), and Wells Fargo has
8  not met its burden of showing otherwise. The court will reconsider the legal issue in the context of
9  an appropriately-timed summary judgment motion.

10  Wells Fargo makes additional arguments, but they are inapposite. It argues that "[t]o qualify as
11  'a successor in interest' (and therefore an 'entitled person'), plaintiff must first deliver to Wells
12  Fargo" the documentary proof listed in section 2943(e)(3). *See* Motion at 10. That is not so.
13  Section 2943(e)(3) provides that the beneficiary "may" require reasonable proof that the person
14  making the demand is an entitled person, and it provides a nonexclusive list of documents that "shall
15  constitute reasonable proof." In other words, section 2943(e)(3) gives Wells Fargo the right to ask
16  for reasonable proof. Only then must the entitled person provide the proof. And while Wells Fargo
17  is required to accept the listed documents as reasonable proof, the statute does not bar it from
18  accepting other things.

19  Wells Fargo also contends that the documentary proof must be sent by "personal delivery or by
20  '[r]egistered [r]eturn [r]eceipt [m]ail.'" Motion at 10. Again, section 2943(e)(3) provides examples
21  of sufficient proof that the person making the demand is an entitled person. It does not mandate a
22  delivery method.

23  Here, the TAC alleges that the Fund repeatedly spoke with Wells Fargo representatives about its
24  request for a beneficiary statement. *See* TAC ¶¶ 7-14. Wells Fargo requested certain documents
25  from the Fund, and the Fund repeatedly provided them as requested. *Id.* The TAC does not allege
26  that Wells Fargo asked for anything more. Accordingly, section 2943(e)(3) does not foreclose the
27  Fund's claim.

28  Finally, Wells Fargo argues that to the extent the Fund is acting as an agent for the Rijhwanis, it

1 fails to state a claim because Wells Fargo can only be liable to an entitled person (not an entitled
2 person's agent). Motion at 10-11 (citing Cal. Civil. Code § 2943(e)(4)). This does not change the
3 conclusion at the pleading stage that the Fund adequately pleaded that is was a successor in interest
4 to the Rijwanis.

### 2. The TAC Alleges a Willful Violation

The next issue is whether the TAC alleges that Wells Fargo acted willfully. The statute defines "willfully" as "an intentional failure to comply with the requirements of this section without just cause or excuse." Cal. Civil Code § 2943(e)(4). The court previously found that the SAC failed to allege willfulness. *See* Order, ECF No. 43 at 8. The Fund "allege[d] only that it sent 1 written demand for a beneficiary statement on March 13, 2013," and it did not allege that Wells Fargo confirmed receipt of a written demand. *Id.*

In contrast to the SAC, the TAC alleges that the Fund asked Wells Fargo for a beneficiary statement on March 13, 2013. TAC ¶ 7, ECF No. 44 at 2. Wells Fargo asked the Fund to send specific documents by fax and the Fund complied. *Id.* Wells Fargo confirmed receipt of the demand on April 8, 2013. *Id.* ¶ 9.

The Fund also provided Authorization to Inquire forms that the Rijhwanis executed. *Id.* ¶ 10.[7] Wells Fargo received those by April 15, 2013. *Id.* ¶ 11. Thus, even if Wells Fargo had a just cause or excuse for not accepting the Fund's status as a successor in interest, it should have provided the Fund (in its capacity as the Rijhwanis' agent) with a beneficiary statement by May 6, 2014 (21 days later). In total, the Fund checked on the status of its request on March 26, April 8, 12, 15, 22, 29, and May 6, 2013. *Id.* ¶¶ 7-14. Wells Fargo representatives asked the Fund to resubmit its request on March 26, April 22, and April 29, and the Fund complied each time. *Id.* ¶¶ 7-13. Despite all of this, on May 6, 2013, Wells Fargo told the Fund that it would not provide "the payoff amount," which is the first item listed in the statutory definition of "Beneficiary statement." *Id.* ¶ 14; *see* Cal. Civ. Code § 2943(a)(2)(A). The TAC's detailed allegations remedy the problems identified in the court's

---

[7] The parties appear to accept that the Authorization to Inquire forms permitted the Fund to act as the Rijhwani's authorized agent for purposes of the statute. *See* Cal. Civ. Code § 2943(b)(1). To the extent Wells Fargo argues that the Fund had to submit those forms by registered mail, the court rejects that argument for the same reasons discussed above. *See* Motion at 11.

previous Order. *See* Order, ECF No. 43. On this record, the TAC plausibly alleges that Wells Fargo acted willfully.

### 3. The Punitive Damages Allegations Are Insufficient

The final issue with respect to this claim is whether the punitive damages allegations are sufficient. Wells Fargo moves to dismiss the punitive damages claim as insufficiently pleaded.

California Civil Code section 3294 authorizes exemplary damages against a tortfeasor who has acted with "oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "Malice" is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "Oppression" is "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." *Id.* § 3294(c) (2). Under California Civil Code section 3294(b),

> An employer shall not be liable for [punitive] damages pursuant to subdivision (a) [providing for damages based on oppression, fraud, or malice], based on acts of an employee of the employer unless the employer had advance knowledge of the unfitness of the employee and employed him with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director or managing agent of the corporation.

In federal court, although section 3294 governs the substantive standard a plaintiff must meet in order to obtain punitive damages, a plaintiff need not allege facts supporting the punitive damages claim with particularity. *Tamburri v. Suntrust Mortg., Inc.,* No. C-11-2899 EMC, 2012 WL 3582924, at *3 (N.D. Cal. Aug. 20, 2012); *Taheny v. Wells Fargo Bank, N.A.,* No. CIV. S-10-2123 WKK/EFB, 2011 WL 1466944, at *4 (E.D. Cal. Apr. 18, 2011) ("Although Section 3294 provides the governing substantive law for punitive damages, California's heightened pleading standard irreconcilably conflicts with Rules 8 and 9 of the Federal Rules of Civil Procedure – the provisions governing the adequacy of pleadings in federal court.") (quoting *Clark v. Allstate Ins. Co.,* 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000)). Thus, in federal court, "a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.'" *Taheny,* 2011 WL 1466944, at *4 (quoting *Clark,* 106 F. Supp. 2d at

1019); *see also Somera v. Indymac Fed. Bank, FSB*, No. 2:09-cv-01947-FCD-DAD, 2010 WL 761221 (E.D. Cal. Mar. 3, 2010) ("Under federal pleading standards, defendant's argument that plaintiff must plead specific facts to support allegations for punitive damages is without merit.")).

Here, the TAC alleges that "Defendant's refusal to provide the beneficiary statement was in bad faith, and was oppressive, wanton, and malicious, thereby entitling Plaintiff to an award of punitive damages. Defendants knew that they were required to provide a beneficiary statement to Plaintiff and maliciously refused to provide the statement." TAC ¶ 30, ECF No. 44 at 5.

Wells Fargo argues that these allegations are insufficient because they do not allege that "an officer, director or managing agent of the corporation" acted with the requisite scienter or ratified such an act. *See* Motion at 12. The court agrees. The allegations refer to the actions of Wells Fargo, without distinguishing between the corporation, acts of officers, directors, or managing agents, and acts of their employees. That is not enough.

The Fund nonetheless argues that it can rely on unsupported and conclusory averments of malice or fraudulent intent. *See* Opp'n at 5. While that is true, it does not relieve the Fund of its obligation to plead the elements of the claim. "Under California law, a corporate entity is incapable of engaging in willful and malicious conduct for purposes of punitive damages liability." *Taiwan Semiconductor Mfg. Co. v. Tela Innovations, Inc.*, No. 14-CV-00362-BLF, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014). Thus, the Fund must base its punitive damage claim on the acts of officers, directors, or managing agents. *See Taheny*, 2011 WL 1466944, at *9. Accordingly, the court grants Wells Fargo's motion to dismiss this claim without prejudice, to the extent it seeks an award of punitive damages.

**C. The Fund's Third Claim**

The Fund's third claim is for a violation of 12 C.F.R. § 1026.36. Under the version of section 1026.36 that was in effect[8] at the relevant time, *see* TAC ¶ 34, ECF No. 44 at 5,

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall . . . [f]ail to provide, within a reasonable time after receiving a request from the consumer or any person acting on behalf of the consumer, an accurate statement of the total outstanding balance that would be

---

[8] 12 C.F.R. § 1026.36 was amended effective January 14, 2014.

required to satisfy the consumer's obligation in full as of a specified date.

12 C.F.R. § 1026.36(c)(1)(iii) (2013). The regulation does not define what a "reasonable time" is, but it does define several other relevant terms. A "consumer" is "a cardholder or natural person to whom consumer credit is offered or extended." 12 C.F.R. § 1026.2(a)(11). "Consumer credit" "means credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 1026.2(a)(12). A "dwelling" is "a residential structure that contains one to four units, whether or not that structure is attached to real property. The term includes an individual condominium unit, cooperative unit, mobile home, and trailer, if it is used as a residence." 12 C.F.R. § 1026.2(a)(19). A "person" is "a natural person or an organization, including a corporation, partnership, proprietorship, association, cooperative, estate, trust, or government unit." 12 C.F.R. § 1026.2(a)(22). And a "servicer" is "a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan)." 12 C.F.R. § 1024.2(b).

The Fund alleges that it "sent numerous written demands to [Wells Fargo] for a statement as to the amount necessary to payoff the loan and to reinstate the loan." TAC ¶ 33, ECF No. 44 at 5. In April 2014, the Fund submitted the "two written authorizations to inquire" to Wells Fargo, which "notified [Wells Fargo] that [the Fund] was entitled to information on the account both as the owner of the Property and as an agent to the Borrower relating to the obtaining of information related to the loan." *Id.* ¶ 34. More specifically, the authorizations permitted the Fund "to assist Borrowers in obtaining information about their loans." *Id.* ¶ 10. As discussed above, Wells Fargo received these authorizations by April 15, 2013, and verified them by April 22, 2013. *Id.* ¶¶ 11-12. Nonetheless, Wells Fargo refused to provide the Fund with the "payoff amount." *See id.* ¶¶ 13-14. The "payoff amount" appears to correspond to the "total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date," that Wells Fargo must provide under 12 C.F.R. § 1026.36(c)(1)(iii). Wells Fargo did not provide this information until October 11, 2013. *See id.* ¶ 35.

These allegations show that the Fund plausibly alleges that Wells Fargo violated 12 C.F.R. § 1026.36(c)(1)(iii) by not providing the Fund with the outstanding balance on the Rijhwani's loan

in response to the Fund's April 2013 requests. Wells Fargo's failure to respond to the Fund's request was "[i]n connection with a consumer credit transaction secured by a consumer's principal dwelling." *See id.* § 1026.36(c)(1). The consumers were the Rijhwanis. *See* 12 C.F.R. § 1026.2(a)(11)-(12). Because the Fund is not a consumer within the meaning of the regulation, § 1026.36 does not require Wells Fargo to respond to a request on its behalf. Nonetheless, to the extent the Fund was acting on behalf of the Rijhwanis, Wells Fargo was required to provide them with a statement of the total outstanding balance on the First Loan within a reasonable time. Whether Wells Fargo responded within a reasonable time is a question of fact inappropriate for determination on a motion to dismiss.

Wells Fargo's arguments to the contrary are unavailing. It first argues that "there is no allegation that [the Fund] made a written request for a payoff statement **after** it submitted 'the written authorization to inquire.'" Motion, ECF No. 46 at 14. Not so. The TAC alleges that the Fund repeatedly asked for a beneficiary statement, starting in March 2013. *See* TAC ¶ 7, ECF No. 44 at 2. As discussed above, the first item on the Beneficiary Statement is "[t]he amount of the unpaid balance of the obligations secured by the mortgage or deed of trust . . . ." Cal. Civ. Code § 2943(a)(2)(A). Thus, the allegations that the Fund requested a beneficiary statement plausibly allege a request for a statement "of the total outstanding balance that would be required to satisfy the consumer's obligation in full as of a specified date." 12 C.F.R. § 1026.36(c)(1)(iii). The Fund resubmitted the same requests after it submitted the written authorizations to inquire in April 2013. *See* TAC ¶¶ 12 (asking the Fund to resend its previous requests), 13 (asking the Fund to resend it request and refusing to provide the payoff amount), 14 (Wells Fargo refusing to provide any payoff information). Read in context with all of the allegations, the TAC plausibly alleges that the Fund requested the payoff information after it submitted the authorizations.

Next Wells Fargo argues that because the authorization agreements allowed the Fund to "assist Borrowers in obtaining information about their loans," TAC ¶ 10, Wells Fargo only had to provide the payoff information directly to the Rijhwanis and not to the Fund. *See* Motion, ECF No. 46 at 14. Because "[t]here is no allegation that a payoff was not provided directly to the Borrowers," Wells Fargo contends the claim fails. *Id.* The court disagrees. It does not matter whether the

1   authorization agreements (or the regulation) identifies who Wells Fargo had to provide with the
2   payoff information because the TAC alleges that the Fund was "informed that Wells Fargo would
3   not provide *any* payoff information." TAC ¶ 14 (emphasis added). The allegations about Wells
4   Fargo's blanket refusal is sufficient to state a claim.

5   Wells Fargo also cites Consumer Financial Protection Bureau comments that suggest it needed
6   only "provide an accurate payoff balance **to a consumer**" (not a person acting on behalf of a
7   consumer). Motion, ECF No. 46 at 14 (quoting 78 Fed. Reg. 10902, 10903 (Feb. 14, 2013))
8   (emphasis added by Wells Fargo). But those comments pertain to a final rule that was not effective
9   until January 10, 2014. *See* 78 Fed. Reg. at 10902. Accordingly, they do not support Wells Fargo's
10  argument.

11  Next, Wells Fargo argues that the TAC does not allege the Fund acted as the Rijhwanis' agent.
12  Motion at 15. The court previously found that the Fund did not adequately allege "that it was
13  'acting on behalf of' the Rijhwanis, as Section 1026.36 requires." Order, ECF No. 43 at 10. The
14  TAC remedies that deficiency. It alleges that the Fund submitted the authorizations to inquire to
15  Wells Fargo, and Wells Fargo "confirmed that the authorization had been approved." *See* TAC
16  ¶¶ 11-12, 34. Because the authorizations were sufficient for Wells Fargo's representatives, the
17  allegations about them are sufficient to survive a motion to dismiss.

18  Wells Fargo's final argument is that even if it failed to provide the Fund with timely payoff
19  information, any claim for damages would belong to the Rijhwanis because the Fund was just acting
20  on their behalf. Motion at 15. While Wells Fargo's argument makes sense, the parties fail to
21  provide the court with the means to evaluate it. The Fund does not tether the alleged regulatory
22  violation to a cause of action. But Wells Fargo does not move to dismiss on this basis. Absent some
23  explanation by the parties of how this alleged regulatory violation does (or does not) give the Fund a
24  right to relief, the court cannot address this argument. Because the burden is on Wells Fargo, the
25  court denies the motion to dismiss.

26  **D. The Fund's Fourth Claim**

27  The Fund's fourth claim is for violation of California Business and Professions Code § 17200.
28  Wells Fargo does not move to dismiss this claim. *See generally* Motion. Accordingly, this claim

survives.

## CONCLUSION

Based on the foregoing, the court **GRANTS IN PART** and **DENIES IN PART** Wells Fargo's motion.  The Fund's first claim is **DISMISSED WITHOUT PREJUDICE**, the second claim is **SURVIVES**, except for the punitive damages allegations, which are **DISMISSED WITHOUT PREJUDICE**, and the third and fourth claims **SURVIVE**.  Because this is only the second time that the court has ruled on the Fund's claims, it may (but need not) file a Fourth Amended Complaint within 21 days.

This disposes of ECF No. 46.

**IT IS SO ORDERED.**

Dated: September 3, 2014

_____
LAUREL BEELER
United States Magistrate Judge